(80 Misc. Rep. 263.)

In re BALDWIN.

(Supreme Court, Special Term, Erie County. March, 1913.)

1. ELECTIONS (§ 194*)—IDENTIFICATION MARKS—SIMILAR NAMES.

Where one Merkley was running against one Marley, a ballot containing one diagonal pencil mark after Marley and a full cross after Merkley will not be held to be marked for "purposes of identification"; the voter evidently having confused the names when he put the single diagonal after Marley.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 166, 167; Dec. Dig. § 194.*]

2. MANDAMUS (§ 3*)—TOWN ELECTIONS—CANVASS—QUO WARRANTO.

General Election Law (Consol. Laws 1909, c. 17) § 381, giving the court the summary right to review the proceedings of a board of canvassers, has no application to town elections when held at any other time than that of a general election, and a proceeding in mandamus under such sec-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion cannot be sustained; nor does Town Law (Laws 1890, c. 569) § 37, as amended by. Laws 1899, c. 168, providing that the ballots shall be disposed of in the manner provided by General Election Law, § 111, or General Election Law, §§ 330, 331, 332, 340, 341, 342, and 343, give any such power to the court; the correct remedy being by quo warranto.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 8, 10, 11, 16–34; Dec. Dig. § 3.*]·

Application by C. Whitney Baldwin for a writ of mandamus to review the action of the Inspectors of Election for the Town of Attica. Dismissed.

Ralph Kellogg, for relator.

Russell J. Stone, of Attica, for respondents.

WHEELER, J. This proceeding is brought under the provisions of section 381 of the General Election Law (Consol. Laws 1909, c. 17) for a writ of mandamus requiring the board of canvassers officiating at an annual election of town officers of the town of Attica, Wyoming county, held on February 25, 1913, to reassemble and recount the votes cast at that election, and declare said election after having deducted two certain ballots mentioned and described in the petition. At that election, the relator, C. Whitney Baldwin, was the candidate of the Democratic party for supervisor of the town. Burt S. Disbrow was a candidate of both the Republican and Progressive parties for the same office. Each candidate received at said election 366 votes, and the result as declared by the board of canvassers was a tie. The relator in his petition, however, contends that two ballots were counted for Disbrow, which were, in fact, void, and should have been rejected by the canvassers. If this be true, then the relator should have been declared elected. As to one of these two ballots, the relator now concedes that it was properly counted, and the contest is narrowed down to a single ballot. The ballot was protested, and bears the indorsement on its back: "Protested as marked for identification." It was inclosed in a separate envelope, and is presented to the court on this hearing for its inspection.

[1] An inspection of this ballot shows that it was not marked for the purpose of identification. The ballot contained the names of all candidates for various town offices arranged in appropriate party columns. Among the candidates whose names appear upon the ballot was the name of Edwin J. Marley, who was a candidate for assessor in the Republican column, and also the name of Henry Merkley for the same office in the Democratic column. The voter casting the ballot in question made his cross-mark in the circle at the head of the Republican column, intending to vote for most of the Republican candidates. He, however, wished to split for Merkley, the Democratic candidate for assessor. The ballot shows a single diagonal pencil mark in the square opposite the name of Marley in the Republican column. The voter there stopped, and then made a cross in the square opposite the name of Merkley in the Democratic column. It is perfectly evident that he confused the names of Marley and Merkley, and by pure mistake made the mark indicated opposite the

name of Marley, and then, discovering his error, made the cross opposite the name of Merkley. The court is constrained, therefore, to find as matter of fact that the ballot in question was not marked for "purposes of identification," and should not be rejected for that reason.

It is, however, contended that the ballot is "void," and should have been rejected by the board of canvassers because it violated the provisions of sections 331, 358, and 368 of the General Election Law.

Section 331 provides, among other things:

"Upon the face of each stub shall be printed in type known as brevier capitals, the following: * * * Any other mark than the cross X mark used for the purpose of voting, or any erasure made on this ballot makes it void and no vote can be counted hereon. If you tear or deface or wrongly mark this ballot, return it and obtain another."

Section 358 provides:

" * * * It shall not be lawful to make any mark upon the official ballot other than the cross X mark made for the purpose of voting, with a pencil having black lead, and that only in the circles or in the voting spaces to the left of the names of the candidates, or to write anything thereon other than the name or names of persons not printed upon the ballot for whom the voter desires to vote in the blank column under the proper title of the office, with a pencil having black lead; nor shall it be lawful to deface or tear a ballot in any manner, nor to erase any printed device, figure, letter or word therefrom, nor to erase any name or mark written thereon by such voter."

Section 368, as amended in 1911 (Laws 1911, c. 649), provides:

"Rule No. 9. A void ballot is a ballot upon which there shall be found any mark other than a cross X mark made for the purpose of voting, which voting mark must be made with a pencil having black lead; or one which is defaced or torn by the voter; or upon which there shall be found any erasure of any printed device, figure, letter or word or of any name or mark written thereon by such voter; or in which shall be found enclosed a separate piece of paper or other material; and upon such ballot no vote for any candidate thereon shall be counted, but no ballot shall be declared void because a cross X mark thereon is irregular in character."

[2] The respondents, however, contend that the provisions of section 381 of the General Election Law, giving the court the summary right to review the proceedings of boards of canvassers, has no application to town elections when held at any other time than at the time of general elections, and therefore this proceeding cannot be maintained. For some time it was assumed that the General Election Law applied, but in the case entitled Matter of Larkin, 163 N. Y. 202, 57 N. E. 404, the Court of Appeals held that local elections at town meetings, not held at the same time as at a general election, are governed by the Town Law, and that the Election Law (Laws 1896, c. 909) is not applicable to such elections.

That was a case of the same nature as this proceeding, brought to review a town election, and must be deemed decisive of this case, unless there has been some amendment to the Town Law or to the General Election Law which changes the legal status of the case. Subsequent to the town election in the Larkin Case, and prior to the decision by the Court of Appeals, the Town Law was amended.

Section 37 of the Town Law (Laws 1890, c. 569) was amended in 1899 (chapter 168), a few weeks after the town election in the Larkin Case, and made to read as follows:

"At the close of the polls at any town meeting, the canvassers shall proceed to canvass the votes publicly at the place where the meeting was held. Before the ballots are opened they shall be counted and compared with the poll list, and the like proceedings shall be had as to ballots folded together, and difference in number as are prescribed in the General Election Law. The void and protested ballots, and the voted ballots other than void and protested, shall be preserved and disposed of by the inspectors in the manner provided by section one hundred and eleven of 'the Election Law. The result of the canvass shall be read by the clerk to the persons there assembled, which shall be notice of the election to all voters upon the poll list. The clerk shall also enter the result at length in the minutes of the proceedings of the meeting kept by him, and shall, within ten days thereafter, transmit to any person elected to a town office, whose name is not on the poll list as a voter, a notice of his election."

The amendment consisted of inserting in the middle of the section the following words:

"The void and protested ballots, and the voted ballots other than void and protested, shall be preserved and disposed of by the inspectors in the manner provided by section one hundred and eleven of the Election Law."

As thus amended, this section of the Town Law remains in force to this day, and it is the contention of the relator in this proceeding that, as so amended, it confers upon the court the power to review the action of the town board of canvassers under the authority of section 381 of the General Election Law. The Court of Appeals, in the opinion in the Larkin Case, refers to this amendment, saying:

. "This amendment is a practical construction by the Legislature of the two laws as they stood, and it is evident that until this amendment was passed there was no provision requiring the ballots used at a town meeting to be preserved after the canvass was completed."

The observations made by the Court of Appeals clearly indicate that the effect of this amendment simply provided for the preservation of the ballots, and did not give any new or further right touching the method of reviewing town elections. In other words, the amendment did not operate to give the right of review under the provisions of section 381 of the General Election Law, save where the town election is held at the same time as the general election in the fall of the year.

If the result has been improperly proclaimed by the town board of canvassers, the injured party still has his remedy by quo warranto proceedings, but not by mandamus under the provisions of section 381 of the General Election Law.

The objections raised go to the jurisdiction of the court to entertain this proceeding, and as we interpret the decision of the Court of Appeals in Matter of Larkin, 163 N. Y. 202, 57 N. E. 404, we have not that power.

We find nothing in sections 330, 331, 332, 340, 341, 342, and 343 of the General Election Law as it stands to-day which modifies our views. Most of the provisions of these sections are copied from the prior sections of the Election Law of 1896, c. 909, in force at the

time of the decision in 'the Larkin Case, and in our opinion do not destroy the effect of the Court of Appeals decision.

Under a quo warranto proceeding, if the relator sees fit to institute it, the court will have the power to examine every ballot cast instead of confining its inquiry as to the particular ballot challenged here. It was doubtless to facilitate a proceeding of this nature that the Legislature, by amendment to the Town Law, provided for the preservation of ballots cast at town meetings as evidence.

The proceeding is dismissed, with $25 costs. So ordered.